UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, an individual filing
anonymously under a fictitious name

       Plaintiff,

v.                                                                                    Case No.

The UNIVERSITY OF MICHIGAN,
a domestic nonprofit corporation;                        Hon.
The BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, a public
constitutional body corporate and
ALISON DAVIS-BLAKE, in her official
capacity as Dean of the Ross School of Business
at the University of Michigan.

       Defendants.

---

David M. Blanchard (P67190)
Daniel Tai (P76798)
BLANCHARD & WALKER PLLC
Attorney for Plaintiff
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
tai@bwlawonline.com

---

**TITLE IX COMPLAINT AND DEMAND FOR JURY TRIAL**

## Statement of the Case

1. This is an action involving claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (hereinafter, "Title IX"), arising out of Defendant the University of Michigan's ("the University") deliberate indifference toward, and unreasonable and insufficient response to, sexual harassment, intimidation, and retaliation suffered by Plaintiff Jane Doe ("Plaintiff" or "Doe").

2. Plaintiff is a 2014 graduate of the Executive Masters of Business Administration ("EMBA") program at the University of Michigan Stephen M. Ross School of Business ("the Ross School"). During her time in the EMBA program, Plaintiff was stalked and sexually harassed by a fellow EMBA student (hereafter, "the Harasser"). Plaintiff complained of the harassment to the University and officials in the Ross School.

3. Defendants have a duty to protect reporters of campus sexual misconduct during and throughout the reporting process. The Ross School overrode this process, denied Plaintiff the protection of interim measures ordered by the University's Office of Institutional Equity ("OIE"), and failed to effectively prevent, deter, and punish the retaliation directed at Plaintiff.

4. Defendants had actual knowledge of the harassing and threatening behavior actual knowledge that the University's interim measures actually adopted

were inadequate at preventing or deterring further harassment and retaliation by the Harasser, Defendants failed to provide a prompt and equitable response process to Plaintiff's complaints, resulting in further harassment and embarrassment to Plaintiff. Defendants' conduct caused Plaintiff to suffer severe emotional and physical distress, embarrassment, invasion of privacy and damage to her reputation, in addition to economic damages for treatment and rehabilitation of same.

5. Plaintiff reported the factual allegations to the Department of Education Office of Civil Rights ("OCR") on or about September 12, 2014.

6. On or around October 1, 2014, the OCR accepted Plaintiffs complaint for investigation, stating in a letter that:

> "OCR is already investigating similar legal issues in a pending complaint against the University, OCR Docket No. 15-14-2111. Accordingly, OCR has determined that this complaint will be merged with Docket No. 15-14-2111. Based on the allegations in the merged complaint, OCR is investigating the following legal issues:
>
> 1. Whether the University provided prompt and equitable responses to sexual harassment complaints, reports, and/or other incidents of which it had notice (knew about or should have known about), as required by the Title IX implementing regulation at 34 C.F.R. §§ 106.8 and 106.31.
>
>    a. Whether the University complied with the requirements of the Title IX regulation at 34 C.F.R. § 106.9 regarding notice of nondiscrimination.

    b.    Whether the University complied with the requirements of the Title IX regulation at 34 C.F.R. §§ 106.8 and 106.9(a) regarding the designation and notice of a Title IX coordinator.

  2.    Whether any failure by the University to provide a prompt and equitable response allowed a student or students and/or the campus, generally, to continue to be subjected to a sexually hostile environment that denied or limited a student's or students' ability to participate in or benefit from the University's program, in violation of the Title IX implementing regulation at 34 C.F.R. §§ 106.8 and 106.31.

7.    After more than two years of investigation, the OCR has not taken any known action on any of the merged cases. The OCR has not provided any status updates regarding the investigation of Plaintiff's Complaint. Media reports have suggested that University's General Counsel Office has delayed the investigation.

## Parties, Jurisdiction & Venue

8.    Plaintiff Jane Doe is a citizen of the State of California who resides in Los Angeles County, California.

9.    Defendant the Board of Regents of the University of Michigan is a public body corporate within the meaning of Michigan Constitution of 1963, article 8, section 5 and an instrumentality of the State of Michigan that is charged by law with the administration of Defendant the University of Michigan, an educational institution and public university of the State of Michigan. All three of

the University's campuses are located in the Southern Division of the U.S. District Court for the Eastern District of Michigan.

10. Defendant Alison Davis-Blake was Dean of the Ross School of Business at all relevant times herein, who acted in her official capacity by her conduct violating the rights of Plaintiff.

11. Defendants receive federal funding and financial assistance from the United States Department of Education.

12. Defendants are subject to the provisions of Title IX and its implementing regulations.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

14. Venue is proper in the Southern Division of the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because Defendants reside in the Southern Division of the Eastern District and are subject to this Court's personal jurisdiction.

## Factual Allegations

15. The EMBA program is a 21-month "residency" program with locations at the University's main campus in Ann Arbor, Michigan and off-campus in Los Angeles, California.

16. Plaintiff's enrollment in the EMBA program began in August 2012.

17. The EBMA program consists primarily of residencies held one weekend each month. Plaintiff attended residencies at the Los Angeles location.

18. The University advertised the EMBA program as an opportunity to build lifelong relationships with other business professionals. According to one brochure, "As you study, dine and socialize together, you'll forge relationships that last a lifetime. And when you're not on campus you'll remain connected to classmates and faculty through a virtual environment that mirrors today's global workplace."

19. Plaintiff reported the harassment to the OIE and to the Ross School on March 13, 2014. Plaintiff identified the Harasser in the report she made to the OIE.

20. On or around March 17, 2014, Plaintiff provided the OIE with a letter more fully describing the harassment that she was experiencing.

21. In both her March 13, 2014 report and in the March 17, 2014 follow-up letter, Plaintiff expressed fear for her own safety, as well as the safety of other students, because of the threatening and intimidating behavior demonstrated by her peer.

22. On or around March 18, 2014, Plaintiff provided the OIE with copies of the Harasser's threatening and harassing communications, including emails, text messages, and social media posts.

23. The evidence that Plaintiff provided to the OIE confirmed that the Harasser posed a substantial and immediate risk to her safety and the safety of others.

24. On or around March 21, 2014, the OIE issued, as an interim measure, a no contact order prohibiting the Harasser from contacting Plaintiff or retaliating against her for reporting the harassment.

25. On information and belief, the OIE also recommended that the Harasser be prevented from attending the next weekend session. But Ross administration refused to implement OIE's recommendation because of the perceived disruption to the program.

26. Defendants did not promptly inform Plaintiff of the no-contact/no-retaliation order.

27. Plaintiff learned of the interim measures approximately ten days later, on March 31, 2014.

28. After learning of the interim measures Plaintiff, immediately informed the Ross School that those measures, as implemented by the Ross School, did not address her safety concerns. Plaintiff also requested that the Ross School provide security in the classroom during the final EMBA residency the weekend of Friday, April 4, 2014.

29. Despite the OIE's no-contact/no-retaliation order, the Ross School administration refused to separate the Harasser from Plaintiff, or to provide classroom security. Ross School administration suggested that Plaintiff complete her two-year residency program by attending the final (April) residency in Ann Arbor, isolated from her classmates of two years.

30. Plaintiff declined the Ross School's suggestion that she isolate herself.

31. Representatives of the Ross School also informed Plaintiff that it would not provide security during the April residency, as she had requested, because school administration "did not want to escalate the situation."

32. Because of the Ross School's failure to enforce the OIE's no-contact/no-retaliation order, Plaintiff was required to take exams and turn in papers at a later date to avoid suffering additional harassment and retaliation.

33. Further, administrators at the Ross School told Plaintiff that she should not attend an extracurricular function where the Harasser would be present, thereby discouraging Plaintiff from networking with her classmates and otherwise participating in, and enjoying the benefits of, the EMBA program.

34. As a result the Ross School's failure to enforce the no-contact/no-retaliation order, the Harasser continued to harass and retaliate against Plaintiff during the April residency by making several posts on social media in which he

derogatively referred to Plaintiff as a "scrub" and a "ho," and by sending derogatory and sexually explicit emails to Plaintiff's peers in the EMBA program.

35. Plaintiff reported these violations of the no-contact/no-retaliation order to the OIE and the Ross School.

36. Additionally, the Harasser called Plaintiff a "lying slut whore who owes him an apology" in an email that was received by Claire Hogikyan, the EMBA Program Director, and Rebecca Veidlinger, the University's Title IX Investigator, among others. The University did not inform Plaintiff of this new threat. Defendant Alison Davis-Blake reportedly suggested that information be withheld and actions be delayed. Davis Blake reportedly stated her preference to "just get through the weekend."

37. On April 8, 2014, the Harasser sent a rambling, threatening email to Hogikyan, Veidlinger, and other staff and faculty of the Ross School. In that email the Harasser proclaimed, "I will graduate, with my class, in person and on time. [Plaintiff] will be barred from the premises and from all programs thereto pertaining. Or things could actually start to become slightly acrimonious, litigious, and epically embarrassing for all concerned parties."

38. The Ross School was so concerned by the April 8, 2014 email and others to University officials in the same time frame that its Director of Operations,

Charles Amyx, contacted the University of Michigan Police Department to request a "threat assessment" of the Harasser.

39. University of Michigan General Counsel was directly aware of the threats to Plaintiff as well as University Administration. However, neither the General Counsel, nor OIE, nor the Ross School informed Plaintiff of the threatening emails, or that the Ross School had contacted police to request a risk assessment.

40. The EMBA's commencement was scheduled for May 1, 2014 at the Ross School's main campus in Ann Arbor, Michigan. The University made arrangements for students from Los Angeles, including Plaintiff, to stay on site at the Executive Residence in the Ross School.

41. The day before commencement, April 30, 2014, Plaintiff went to the Executive Residence league to participate in a social function for EMBA students.

42. Defendants knew or had a reasonable belief that the Harasser was likely to attend the function to intimidate Plaintiff but did not inform Plaintiff of the threat.

43. By this time, Plaintiff had obtained a court protective order against the harasser in addition to the no-contact order issued by OIE.

44. Defendants did not inform Plaintiff that her harasser was likely to violate the orders, nor did Defendants arrange security in anticipation.

45. The Harasser did not leave when Plaintiff arrived in the league. He remained there until Plaintiff had to call police herself.

46. On May 1, 2014, the OIE issued a 25-page report on Plaintiff's report of sexual harassment against the Harasser. The reported concluded, "[The Harasser] is determined to have violated the University of Michigan Policy on Sexual Misconduct by Students by engaging in sexual harassment and retaliation. This concludes OIE's involvement in this matter under the Policy. This matter is referred to the Office of Student Conflict Resolution for follow-up and to evaluate whether any other University action is required under the Statement of Student Rights & Responsibilities."

47. Despite the OIE's eventual finding that the Harasser did in fact engage in sexual harassment and retaliation, the University failed to implement any system that would have effectively prevented, deterred, or punished the retaliation that Plaintiff suffered.

48. For example, if the University had adopted a policy that any violation of the no-contact/no-retaliation order would have resulted in an immediate expulsion or other serious sanction, retaliation could have been deterred. Instead, the University allowed the Harasser to send derogatory and sexually explicit emails to a large swath of Plaintiff's classmates, thereby poisoning Plaintiff's relationship

with her academic peers and denying her the advertised benefits of the EMBA program.

49. The University pursued a "wait it out" policy, counting on the conflict to resolve itself after the May graduation.

50. UM only addressed the situation the hour before commencement to Plaintiff's class, in a meeting with her classmates where the Plaintiff was required to stay away and was not invited. The Dean's vague address led the classmates to assume the Plaintiff may have been at fault for the Harasser not being at the ceremony. UM never communicated that the Harasser threatened the University staff as well which contributed in large part to his removal from last day of class and graduation week. As a result, the students have had to rely on the assumption that only the Plaintiff had anything to do with these removals, which continues to tarnish her image to this day.

## Title IX

51. The University, as a federal loan recipient and participant in Title IV of the Civil Rights Act of 1964, is required to comply with federal law, including Title IX.

52. Title IX prohibits gender-based harassment, which may include acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, regardless if those acts include conduct of a sexual nature.

53. A school is responsible under Title IX for the sexual harassment of a student by another student (i.e., peer sexual harassment) when the school remains deliberately indifferent to severe, pervasive and objectively offensive sexual harassment of which it has actual knowledge.

54. Under Title IX, a school remains deliberately indifferent to the harassment where its response was clearly unreasonable in light of the known circumstances. Evidence of deliberate indifference can include the failure to provide academic accommodations and the failure to adequately discipline the harassing student.

55. A school is responsible to take prompt and equitable remedial measures, including interim measures reasonably designed to deter retaliation during investigations and promptly advising survivors of credible threats to their safety during the investigatory process.

56. It is a violation of Title IX for a school to delay action until after survivors have graduated simply to avoid disruption.

## COUNT I

## Violation of Title IX – 20 U.S.C. § 1681(a)

57. Plaintiff hereby re-alleges and incorporates by reference the preceding paragraphs.

58. The University had actual knowledge of Plaintiff's sexual harassment and retaliation perpetrated by the Harasser.

59. The University's responses to the harassment were clearly unreasonable in light of the known circumstances, in violation of 20 U.S.C. § 1681(a).

60. The harassment and retaliation, consisting of the Harasser's harassing and retaliatory communications, threats, and violations of the no-contact order, were so severe, pervasive, and objectively offensive that it denied Plaintiff equal access and enjoyment of educational opportunities and benefits.

61. Plaintiff was subject to the discrimination because of the University's deliberative indifference to known acts of sexual harassment and retaliation, including, without limitation:

> a. The deliberate decision by the Ross School to allow the Harasser to attend classes during the final residency weekend in April 2014, despite the OIE's order that the Harasser not have contact with Plaintiff;

    b. The deliberate decision by the Ross School to request that Plaintiff attend the final residency weekend in Ann Arbor rather than in Los Angeles, in isolation from her classmates of the previous two years;

    c. The deliberate decision by the Ross School not to inform Plaintiff of the Harasser's threats to Ross School staff and faculty regarding Plaintiff;

    d. The Ross School's failure to put the proper preventative measures in place, in advance, to prevent Plaintiff from being subjected to further contact, harassment, and retaliation by the Harasser during Plaintiff's commencement celebration in Ann Arbor, despite the University's actual knowledge that the Harasser intended to travel to Ann Arbor with the purpose of harassing and embarrassing Plaintiff; and

    e. The deliberate decision by the Ross School to avoid and delay disciplining Plaintiff's Harasser because of Plaintiff's impending graduation.

62. Had the University taken reasonable steps to protect Plaintiff's safety, it would have prevented Plaintiff from being harassed and retaliated against for filing a report with the OIE.

63. Because of the University's deliberate indifference, Plaintiff has suffered losses of educational opportunities and benefits, along with injuries, damages, and losses, including, but not limited to: severe emotional distress, physical ailments, embarrassment, invasion of privacy and damage to her reputation, in addition to economic damages for treatment and rehabilitation of same.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants awarding:

   a. Injunctive relief to be determined at trial requiring Defendants to comply with federal law under Title IX;

   b. Damages in amounts to be established at trial, including, without limitation, reimbursement and prepayment for all of Plaintiff's tuition and related expenses; payment of Plaintiff's expenses incurred as a consequence of the sexual harassment and retaliation; damages for deprivation of equal access to the educational benefits and opportunities provided by Defendants; damages for lost economic opportunity; and damages for past, present and future emotional pain and suffering, and ongoing and severe mental anguish;

   c. Pre- and post-judgment interest;

    d. Costs;

    e. Attorneys' fees pursuant to 42 U.S.C. § 1988(b) or otherwise; and

    f. Such other and further relief as the Court may deem just and proper.

> Respectfully submitted,
> BLANCHARD & WALKER, PLLC
>
> s/ David M. Blanchard
> David M. Blanchard (P67190)
> 221 N. Main Street, Suite 300
> Ann Arbor, MI 48104
> (734) 929-4313
> blanchard@bwlawonline.com

Dated: March 10, 2017

## DEMAND FOR JURY TRIAL

Now Comes Plaintiff, Jane Doe, by and though her attorneys, Blanchard & Walker, PLLC, and hereby demands a trial by jury in the above captioned matter.

>Respectfully submitted,
>BLANCHARD & WALKER, PLLC
>
>s/ David M. Blanchard
>David M. Blanchard (P67190)
>221 N. Main Street, Suite 300
>Ann Arbor, MI 48104
>(734) 929-4313
>blanchard@bwlawonline.com

Dated: March 10, 2017